Good morning. Good morning, Your Honours. May it please the Court? My name is Carmen Smarandoglio and I represent Mr. Sainz. I would like to reserve two minutes for rebuttal. And we'll try to help you. Mr. Sainz's case actually involves an agreement with the government. It was not a plea agreement, but it was a post-conviction substantial assistance agreement. And Mr. Sainz's appeal raises a question about the role of the courts in our adversarial legal system. More specifically, it raises the question whether a district court may substitute its judgment for that of the government and on its own authority invoke a defendant's waiver of his 3582 rights and dismiss such a motion on that basis when the government didn't do so. The answer to that question I respectfully submit is provided by the Supreme Court's decision in Wood v. Milliard. And also informative, it is the Eleventh Circuit decision in United States v. Burgess. And that answer is clearly no. We really don't have a case right on point on that, do we? No, Your Honor. This is an issue of first impression in this circuit and probably in quite a number of circuits. Despite being an issue of first impression, I believe that for a long time most district courts have actually very faithfully applied the same rule. I am, at least in the Northern District, this rarely happens. And it is, I believe, for that reason that we have this for the first time before Your Honors. It might be also that before the Supreme Court's decision in Wood v. Milliard, the implications of a district court's sua sponte raising a defendant's waiver of rights when the government doesn't do so was not quite clear. But in Wood v. Milliard, the Supreme Court clarified that a government's waiver of, in that case, procedural defense has an impact or binds not only the parties but also the conduct of, in that case, the Tenth Circuit, also the conduct of the courts. It's interesting, though. It's true, the government, by not addressing this issue, it's like a contract on both sides and there's a waiver if they don't do anything. But you're, on the other hand, asking the court to reduce a sentence based upon its own judgment. I mean, it gets the input of the parties and so on. It makes some decisions in that regard. And you're saying we want you to make a decision in that area, but you have no authority to take into account the waiver, the appellate waiver that was there on the table. Why is that? It is true, Your Honor. That's exactly the rule that I'm asking for and it is the rule that the Eleventh Circuit actually adopted in Burgess. And as Your Honor correctly noted, the main reason for that rule is the fact that an agreement with the government, be it a plea agreement or a post-conviction substantial assent agreement, is in the nature of a contract. It is not a perfect analogy, but for the most part, this Court has applied principles of contract law to plea agreements and has, and for that particular reason, when a district court invokes the rights conferred by a plea agreement, it does, that decision does not involve any kind of heightened public interest policies. The plea agreements confer rights to the parties. It is the party's right and interest in asserting those rights. And the district court has no interest, aside maybe the efficiency of its own docket, to raise, to invoke those rights and benefits on behalf of the parties. The Fourth and Tenth Circuits agree with you. Do you have any other authority from any other circuit that have addressed this issue? Aside from the Eleventh and the Supreme Court itself? Right. No, Your Honor. Okay. I think, as I mentioned, I think the issue rarely arises because usually district courts exercise restraint and actually decide on the claims and on the defenses that are actually before them. I would also point out that although I don't have authority that's all on four on this issue, this Court's own practice in the context of appellate waiver is certainly consistent with that rule. This Court has for a very, very long time refused to raise and to enforce a waiver of appellate rights when the government didn't do so. And although this Court has not stated that rule in terms of authority, I would respectfully submit that's the spirit that animates that line of cases. What role does Wood v. Milliard play, if any, in this case? Wood v. Milliard is the first decision, in my opinion, in which the Supreme Court spelled out that a government waiver of, in that case, a procedural defense in the conduct of the courts. In that particular case, it was the Tenth Circuit who invoked the statute of limitations defense on its own. And the Supreme Court's unmistakable message was that courts may not do that. So you admit the facts are different, of course. You're just saying that the concept that what the parties do bind the court is what you want us to take from Wood. Yes, Your Honor. I would — the principle equally applies. And, in fact, I will submit applies even stronger in this context of plea agreements. In Wood v. Milliard, we had a procedural defense that is congressionally mandated, that reflects certain heightened public policy interests like finality and comity. And what the Supreme Court told us, that even in that context, in the habeas context, which is so stacked up against granting relief, even in that context, the principles of party presentations that are crucial to our adversarial system still apply. Isn't the waiver question in our case still a little bit different? In other words, here, the district court, you know, didn't say, in effect, well, government doesn't raise it, but I think it's been waived, so you waived it. The district court only, you know, considered waiver as one of the factors that it would have to consider. And the district court said, well, you know, this is abuse of discretion review, and isn't it something that the court can consider in determining what action to take on the underlying issue? In other words, district court didn't say, well, it's waived. Otherwise, you would have just stopped right there and said, you know, that's it. You waived it. We won't hold the hearing. Right? If I may respond to your question, Your Honor, the district court did not consider the waiver as just one of the many factors in this court. What the district court did was it denied Mr. Sainz's motion based on the waiver. So, second of all, I don't know if I would agree. I don't think it would be an appropriate consideration that the waiver go into the discretionary decision whether to grant a reduction. But that's certainly not what happened in this court. The district court invoked the waiver sua sponte, and it denied Mr. Sainz's motion on that basis. And with your permission, I would agree. Why don't you save the balance of your time? Thank you. I'll bet the government disagrees. May it please the Court, my name is Mary Jean Chan, and I represent the United The district court did not abuse its discretion in enforcing the 3582C2 waiver. That waiver was part of a cooperation agreement that the district court accepted and that formed the backdrop to the Rule 35 resentencing proceeding in 2014. Counsel, do you agree that case law is pretty clear that when the government doesn't raise the appellate waiver that it is waived, at least as between the two parties? Do you agree with that? Well, I think that that can be forfeiture, and under the Day-Wood line of reasoning by the court, not just the Court of Appeals, but the Supreme Court, the district court has an ability to sua sponte, raise a forfeited defense, or rely on a forfeited defense, so long as there isn't an intentional waiver. In all those cases where the courts have found an intentional waiver, the government has specifically acknowledged that basis and said, I'm not relying on it. The government has raised it. So in other words, you're saying that in this case, because the court didn't know whether the government just forgot or was careless or something like that, it was free to move forward sua sponte, but if the government had said or made it clear in its otherwise, we're not raising this, then it would have an effect on the court. Is that correct? Yes. That's what I think the Wood-Day line of cases very clearly says. And to the extent that Burgess disagrees, I think that this court is bound by the Supreme Court cases in Day and Wood. What about the reasoning of the Fourth and Tenth Circuit cases? You know which ones I'm talking about, right? Actually, I wasn't sure I was going to raise that because I think that there are some unpublished cases that were cited. Let's see. Well, one of them is unpublished. That's Calargas-Novatia, but Calderon is published and Garner is, no, just Calderon is published. So, Your Honor, I don't recall exactly the facts of Calderon, but I will say that I can talk about the Burgess case, which is the 2255. And that court in the Eleventh Circuit held a rule that was contrary to Day and Wood, and I think it was mistaken. But the facts in that case are also very distinct from this. The court in that case said the civil rules should apply because this is a 2255 proceeding, which is technically a civil proceeding. We don't have that here. This is purely a criminal proceeding. The 3582 proceeding is a criminal proceeding. There is no kind of way to force the civil rules into this case to supersede the Day-Wood line of cases. And also, I think it is something that was raised earlier, which is that plea agreements and cooperation agreements are interpreted like contracts, but they're not purely contracts like private party contracts where you only have two parties that are interested. The court here had an institutional interest in this. Because it was the background, the waiver was the background against which Judge Jensen actually granted the extra reduction in sentencing. Let me pick up on your comment. Let's say that we agreed on arguendo that it's the intention of the government and its waiver that controls. In this case, what evidence, if any, did the district court have about the intention of the government when it didn't invoke the waiver? It had no evidence that it was an intentional waiver. There was simply silence. In all the other cases, there has been a specific mention that the government is not relying on a ground. In Burgess, even, the district court in that case asked the government to respond to the timeliness and to the waiver arguments. The government specifically did not respond to that and say that it was going to assert that. Right? And from your perspective, this court should adopt a rule that if the government  Yes, it's allowed to invoke that waiver, particularly when there is no sort of prejudice to the defendant. In this case, the defendant has never, despite having opportunities, stated that the waiver was not valid. So because of that, this court, I think, should find that there was no abuse of discretion by the district court. How do I know there was no abuse of the discretion in this situation? Does the district court have to hold some kind of an evidentiary hearing to determine whether it's invocation of this? I would think it would affect the defendant because it does away with his ability to appeal. In this case, we're not talking about the appellate waiver. We're talking about the 3582 waiver. Right. So I think the Wood line of case is actually very clear about the circumstances in which a district court may sui sponte, raise a forfeited offense. And those are where there has not been evidence of the government intentionally relinquishing or strategically waiving the defense, and where the defendant has an opportunity to kind of raise any opposition. In this case, the government Excuse me. I'm sorry, Your Honor. Go ahead. If you finish your statement, then I have a separate question. The defendant didn't specifically have an opportunity in district court to talk about the waiver because it was the sui sponte nature of the writings and the orders. But what I'm saying is that part of it is actually harmless, because in this case, through the appellate proceedings, the defendant has had an opportunity to talk about any of those defenses. And as specifically said, there's no issue, has not stated that there's any problem with the waiver. It doesn't help him much in the appellate proceedings, though. But my question is, prudentially, is it a very good idea to require the government to come forward and say that, no, we're not raising that? Because, frankly, sometimes the prosecutors don't want to say what, in fact, they're doing, because it's one thing for sometimes the ends of justice to not push on something. But on the other hand, they don't want to necessarily go on the record to say that they're not. I mean, I see that happening not infrequently. Well, the court, I think, in this case, I think there was no evidence of that. And I think that the government can, in a way, without, and often does, sort of slightly hint to the court that that's what it's doing. There is no evidence of that, and really that wasn't what was happening here. And that is something that I think is explained and made very clear through the other part of the district court's order, which is, let's look at the actual merits of this and whether the exercises of discretion would be warranted. This is a defendant who got the benefit of the reduction under Amendment 782 to the guidelines. He did get the amendment, and that was very clear. Judge Jensen at the time of holding the proceeding under Rule 35 said, I'm granting him a lower, more of a reduction than I otherwise would based upon the substantial assistance because of the impending amendment to the guidelines, which would reduce the offense, base offense, by two levels. Judge Jensen said that he was doing that. He gave Mr. Saines the benefit of that. In part, I believe, against the background that Mr. Saines had waived his ability to actually move for a 35ED2 motion. But that doesn't change the law of consideration of what a trial judge should do, then, when it's coming before them. I mean, the fact that Judge Jensen did that, it gives some barnyard justice to this. But with regard to the precedent, it doesn't. With regard to the next judge that's sentencing, that on her own says, I'm not going to apply. I don't think what Judge Jensen did should be considered with regard to the law applicable here. Well, I disagree, Your Honor. I mean, and I think that it might not be a total bar, but Judge Friedman, in considering that, was not abusing her discretion. The fact is that you're not supposed to get two bites of the apple. You're not supposed to double count when there's an amendment to the sentencing guidelines. You might not have given him a second bite of the apple. Right. She might not have done anything. But at least she should have done the Dillon analysis. Well, I think she did. I think if you look at the second part of her order, she says, the reason I'm not going to sua sponte make a motion under 3582C2 is because he shouldn't get it. He shouldn't get it, even if he's eligible, because he got it already. He got the full consideration. Two-step analysis, though. She didn't do both steps. Well, the two-step analysis being whether he was eligible. And I don't think anybody was really contesting that technically he was eligible. So the real question was whether she should exercise her discretion once finding there's a finding of eligibility to actually grant that. So she said that under the unique circumstances here, he already got the benefit, so I'm not going to give him the benefit of it again. And that, I think, also plays into why it's entirely appropriate for her to enforce the waiver, because, again, the waiver was the backdrop for why Judge Jensen actually gave him the credit in 2014 when the amendment had not been enacted yet, but was simply impending. He wouldn't be able to argue for it again because of the waiver. So Judge Jensen gave him credit at that proceeding, even though the amendment hadn't gone into effect yet. So there is a great institutional interest in the district court in not being basically having it, you know, being hoodwinked and being taken advantage of just because Judge Jensen had retired and a new judge was coming in to say, essentially, there was no waiver. I can go ahead and just ignore that I had agreed, Mr. Sainz had agreed not to bring this.  How is she being hoodwinked? Harrington. How is the judge being hoodwinked? Harrington. Well, in the sense that sort of saying, like, you know, just like how the probation office was, they had to go back and look at the sentencing transcript, the resentencing transcript, to discern that Judge Jensen had actually given the two points, had given full credit in consideration of the impending amendments. Because that wouldn't be obvious unless you actually went and looked and did the research into it, because there had been a change in personnel. It would be in the statement of reasons, too, in the judgment, that portion of the judgment section. So they wouldn't have to look too far. But hoodwinked, that connotes that somehow the defense was playing somehow a fast move to the court. I don't see that. Well, the defendant didn't specifically say, we waived our 3582 motion, but for whatever reason we think we can still bring this. They brought it to a new judge without mentioning the background of the cooperation agreement, knowing full well that they had raised it with Judge Jensen, a previous judge who had retired, and that in the sentencing proceeding he had given them credit for this. So maybe hoodwink is too strong. I don't mean to connote that it was intentional. But what I mean is that the district court itself has an institutional, I think, stake in enforcing the background waiver. And so for those reasons, I think this Court is really bound by the Day-Wood line of cases issued by the Supreme Court and should not be swayed by the Eleventh Circuit or any of the other courts' rationale. This is not a civil court case, and we do not have an intentional relinquishment or waiver by the government. Let me ask one question. Judge Freeman's order is in two parts. The first part enforces the waiver, right? Yes. She says accordingly because, you know, the waiver motion is denied. So that's a denial of motion. Then she goes on to consider the question of whether or not the court then should consider a reduction in sua sponte. Yes. That's all she does. She really doesn't exercise the court's discretion, her discretion on the merits of whether or not there should be a further reduction, does she? I think she does. All she does is decide, you know, it shouldn't be given sua sponte. That's the effect of the last part of her order, isn't it? Well, the reason I disagree is because she explains why she's not going to exercise her sua sponte authority, and that's based upon, and there's a because to that, which is that it's because Mr. Staines already got the benefit of the amendment when Judge Jensen sentenced him and lowered his sentence more, lowered his sentence to a mandatory minimum, which was five levels beyond what was, which was five levels where the government had recommended two levels for substantial assistance. So the because portion of that decision, I think, indicates that it's an exercise of discretion. Because she wouldn't exercise her discretion to grant the motion, she was not going to bring the motion sua sponte. No questions about my comment? No. Thank you, Your Honors. We ask for an affirmance. So we have a little rebuttal time. I will be very, very quick. First of all, I'm so sorry, 2255 waivers and 3582 waivers are very similar, and I urge you to follow the Eleventh Circuit's decision in Burgess and recognize a categorical rule that when the government does not invoke the waiver, it is unimplied waiver. Furthermore, in this particular Let me ask you this question. What do you, I guess what you hope to get out of this appeal is a reversal of the district court's order and a remand for the district court to consider the reduction on the merits. Is that right? That's correct, Your Honor. Now, but the way Judge Freeman looked at what Judge Jensen did is pretty clear that she thought, you know, he, although he didn't have the legal authority to grant, you know, grant the reduction under the statute, he gave the defendant that credit as if the statute were then in effect. So she, so her position is based on that. I'm not going to, as a matter of discretion, I'm not going to give him any more of a reduction because he's already gotten it. So if you send it back, isn't that the same thing she's going to do again? It's possible, Your Honor, but the district court will have to do many other things. The district court will have to decide whether Mr. Sainz is in, is indeed eligible for a reduction. She will have to decide the extent of a potential reduction. Then she will have to consider all the 3553A factors, including the fact that Mr. Sainz might have gotten some reduction already on account of the amendment before actually deciding whether she should give him a reduction. And that would be part of a 3553A analysis, you're saying, right? It would be part of the 3553A analysis. And the district court very explicitly said in her, the second part of her order that she's not going to take up those issues. But I would like to conclude with why in this particular case we have waiver and there is no possible forfeiture. First of all, under this court's longstanding line of cases, the government's failure to invoke a waiver is an implied waiver. Second, in their answering brief, the very same U.S. attorney who litigated the motion before the district court did not even invoke the concept of forfeiture. That attorney who actually was in the case who litigated the motion did not claim that he inadvertently failed to invoke the waiver. And as importantly and lastly, in my district, in the northern district of California, the government did not invoke the 3582 waivers in any of the cases in which such waivers existed. So the failure to invoke here was consistent with, I don't know if it was an official policy, but certainly it was a consistent practice. And under this totality of the circumstances, I respectfully submit there is no question that the government waived the waiver and that I respectfully request that Your Honor reverse and remand with instructions for the district court to decide the motion on the merits. Thank you. Any other questions by my colleague? No. Thank you both, counsel. Very helpful argument. The case just argued is submitted.
judges: Tashima, M. Smith, Piersol